UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:17-CR-00134-FDW-SCR

| UNITED STATES OF AMERICA | ) |
|---|---|
| v. | ) |
| PEATREZ LAMAR TEASTE, | ) **ORDER** |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 3288). This matter has been fully briefed, (Doc. Nos. 3288, 3305), and is ripe for ruling. Having carefully considered the motion and the record, the undersigned will DENY the motion.

## I. BACKGROUND

Defendant is known to be affiliated with the Nine Trey Gangster Hood of the United Blood Alliance (UBN). (Doc. No. 1670, p. 15). According to the Presentence Investigation Report (PSR), Defendant holds the rank of "Four-Star General" in the UBN. Id.

On March 9, 2016, Defendant and two others drove to the home of an apparent drug dealer who Defendant agreed to purchase 100 narcotic pills from for $1,500. Id. Upon arrival to the seller's home and the beginning of the exchange, Defendant attempted to rob the seller of both the seller's narcotics and about $400 cash by pointing a firearm at the seller and saying, "I want it all." Id. Defendant subsequently shot the seller in the stomach. Id. The seller survived the shooting. (Doc. No. 2925, pp. 18–19).

On November 28, 2016, Defendant's communication with a co-conspirator, Bobby Hines, was intercepted via a court-authorized Title III wiretap of Hines. (Doc. No. 1670, p. 15). Hines

1

asked Defendant how much an ounce of marijuana was, and Defendant responded "150 ah brixk," which translates to $150 per ounce. Id. Hines told Defendant he would purchase $500 of marijuana from Defendant and Defendant agreed to the transaction. Id. Hines and Defendant also discussed the purchase of ecstasy pills, including "how much the pills would cost and how much money they would make from their sale." Id. at 16.

In the First Superseding Bill of Indictment, a Grand Jury in the Western District of North Carolina charged Defendant with Conspiracy to Participate in Racketeering Activity, (Doc. No. 1241), and Defendant pled guilty to this crime, (Doc. Nos. 1270, 1271). Defendant's PSR gave him a Total Offense Level of twenty-nine and criminal history category of II for a sentencing range of ninety-seven to 121 months imprisonment. (Doc. No. 1670, p. 26). Accordingly, this Court sentenced Defendant to 109 months imprisonment. (Doc. No. 2925, p. 26).

On September 7, 2021, Defendant submitted a compassionate release request to his warden, and on October 8, 2021, the warden denied his request. (Doc. No. 3305, p. 3). Then, on February 7, 2022, Defendant moved this Court for compassionate release, requesting his sentence be reduced to time served "based on the Bureau of Prisons inability to provide medical care to the large and growing number of prisoners who continue to become infected with the Coronavirus; his inability to protect himself in a prison setting during this deadly global pandemic; acute Chron's Disease; and the fact that he was not sentenced in such a way that he should have to fear being exposed to a long and painful death instead of the 109 months that this Court imposed." (Doc. No. 3288, p. 1). Defendant has served approximately seventy-eight months of his 109-month sentence.

## II. APPLICABLE LAW

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek modification

of his sentence from the court for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds extraordinary and compelling reasons warrant such a reduction.'" Id. (quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)). "[D]istrict courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

"Second, the court considers 'the factors set forth in § 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A); citing Kibble, 992 F.3d at 331). § 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

"provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

Here, the record is clear Defendant exhausted his administrative remedies; thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release in light of the applicable § 3553(a) factors.

### III. ANALYSIS

#### A. Extraordinary and Compelling Reasons

Defendant argues the fact he is "at a higher risk of death" from COVID-19 due to the immunosuppressing drug he is on to treat his Chron's Disease presents an extraordinary and compelling reason warranting a sentence reduction to time-served, which is approximately seventy-eight months.

The Court acknowledges Defendant suffers from Chron's Disease and the drug he is prescribed is an immunosuppressant. The Court also acknowledges the increased risk COVID-19 poses to those taking immunosuppressing drugs. (See Doc. No. 3288, p. 6). As of April 6, 2021, however, Defendant has received two doses of the Pfizer-BioNTech COVID-19 vaccine.[2] (Doc. No. 3305, p. 11). Moreover, nothing in the record suggests Defendant's current place of

---

[2] It should be noted that since the parties briefed this matter, the U.S. national emergency to respond to COVID-19 has ended. National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

4

Case 3:17-cr-00134-FDW-SCR   Document 3480   Filed 08/08/23   Page 4 of 6

incarceration has failed to take appropriate measures to manage Defendant's medical conditions. In fact, in response to Defendant's petition for compassionate release, the warden of his prison wrote "medical staff have determined that you do not meet the criteria under Debilitated Medical Condition. . . . The evaluation concluded that all of your conditions are controlled through medication. Additionally, you are capable of performing activities of daily living (ADL) without assistance and are capable of carrying out self-care." (Doc. No. 3288, Ex. 1, p. 1). Defendant has failed to provide sufficient basis to support a finding of an extraordinary and compelling reason to warrant Defendant's early release from prison.

### B. § 3553(a) Factors

Even if Defendant had established extraordinary and compelling reasons, the Court concludes a reduction to time served is inappropriate. Defendant argues his time served constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing." Id. at 6. To support this claim, Defendant notes "[t]he Warden did not identify any disciplinary violations received by [Defendant] . . . ." Id. at 6. Defendant's argument, however, is without merit for the following reasons.

First, this Court already determined Defendant's 109-month sentence to be sufficient, but not greater than necessary, to accomplish the goals of sentencing when this Court sentenced Defendant in August 2018. (See Doc. No. 2925, p. 26). And although Defendant correctly claims the Warden did not reference any disciplinary violations as a reason for denying his compassionate release request, he fails to mention the fact he does have an incident on his disciplinary record from September 2020. (Doc. No. 3306, Ex. 2). Even if it were true Defendant did not have a disciplinary record, that alone would be insufficient to warrant this Court to reduce his sentence. See U.S. SENT'G GUIDELINES MANUAL § 1B1.13, APPLICATION N. 3 (U.S. SENT'G COMM'N 2022)

5

("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.").[3] Thus, Defendant's reliance on the Warden's failure to cite to Defendant's disciplinary record in denying his request for compassionate release does not support his argument here.

Moreover, the nature and circumstances of the offense and Defendant's history counsel against granting compassionate release. Defendant's rank in the UBN as a Four-Star General and his involvement in the conspiracy which he is now serving time for—specifically the fact he shot someone in an attempt to rob him—cannot be overlooked. Defendant's criminal activity that landed him in prison today is serious and must be treated accordingly. Thus, this Court still finds 109 months to be sufficient, but not greater than necessary, to comply with the basic aims of § 3553(a).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release, (Doc. No. 3288), is DENIED.

**IT IS SO ORDERED.**

Signed: August 8, 2023

Frank D. Whitney
United States District Judge

---

[3] Notably, the § 1B1.13 policy statement is not binding on this Court but may be considered. U.S. v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) ("There is as of now no applicable 'policy statement' governing compassionate-release motions filed by defendant under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (quoting U.S. v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)).